UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES BARNES, as Personal Representative of the ESTATE OF RACHEL A. BARNES, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN T. BOYD, Sheriff of La Porte County, Indiana, La Porte COUNTY SHERIFF'S DEPARTMENT; SKYLER M. CURTIS, La Porte County Deputy Sheriff; BRUCE VERMILYER, La Porte County Deputy Sheriff; NANCY BUNCH, La Porte County Deputy Sheriff; DALLAS HUTTS, La Porte County Deputy Sheriff; CORPORAL NERISSA MILLER, La Porte County Deputy Sheriff; CORPORAL RYAN JONES, La Porte County Deputy Sheriff; CORPORAL RYAN HAWKINS, La Porte County Deputy Sheriff; DEPUTY SAMUELSON La Porte County Deputy Sheriff; ADVANCED CORRECTIONAL HEALTHCARE, INC.; DR. WELDON COOKE; IUHLP LIQUIDATION, INC. d/b/a I.U. Health - La Porte Hospital;<br><br>Defendants. | Case No. 3:16-CV-00190-RLM-MGG |

**THIRD AMENDED COMPLAINT FOR DAMAGES
AND REQUEST FOR TRIAL BY JURY**

Comes now Plaintiff, James Barnes, as Personal Representative of the Estate of Rachel A. Barnes, Deceased, and for his second amended complaint

1

against Defendants, John T. Boyd, as Sheriff of La Porte County, Indiana, individually and in his official capacity; the La Porte County (Ind.) Sheriff's Department; Deputy Sheriff Skyler M. Curtis, individually and in his official capacity; Deputy Sheriff Bruce Vermilyer, individually and in his official capacity; Deputy Sheriff Nancy Bunch, individually and in her official capacity; Deputy Sheriff Dallas Hutts, individually and in his official capacity; Deputy Sheriff Nerissa Miller, individually and in her official capacity; Corporal Ryan Jones, individually and in his official capacity; Corporal Ryan Hawkins, La Porte County Deputy Sheriff, individually and his official capacity; Advanced Correctional Healthcare, Inc.; Dr. Weldon Cooke; IUHLP Liquidation, Inc. d/b/a I.U. Health - La Porte Hospital and makes the following claims.

## Introduction

1.     This is an action resulting from the wrongful death of Rachel A. Barnes while she was in the custody of the La Porte County Sheriff's Department at the La Porte County Jail ("Jail") in La Porte, Indiana as a pretrial detainee.

## Parties

2.     Plaintiff, James Barnes, is the duly appointed personal representative of the *Estate of Rachel A. Barnes, Deceased,* now pending in the Porter County (Ind.) Superior Court as Cause No. 64D01-1509-EU-007541 of such Court.

3.     At the time of her death, Rachel A. Barnes ("Rachel") was an adult person who was a prisoner confined to the La Porte County Jail ("Jail") in La

2

Porte, Indiana.

4. Defendant Sheriff John T. Boyd ("Sheriff Boyd") is and was at all times mentioned herein, the duly elected Sheriff of La Porte County, Indiana. He is charged by law with "tak[ing] care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(7). He is being sued in his individual and official capacities.

5. Sheriff Boyd and Defendant, the La Porte County Sheriff's Department ("Department"), are responsible for administering the Jail and for making, overseeing and implementing the policies, procedures, practices and customs challenged herein relating to the operation of the Jail.

6. Sheriff Boyd and the Department are also responsible for the supervision, training and hiring of persons, agents and employees working within and without the Department, including Deputy Sheriffs and medical providers.

7. Sheriff Boyd is and was also responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts and omissions of the employees and agents of the Department alleged herein were committed.

8. Defendant Deputy Sheriff Skyler M. Curtis ("Deputy Curtis") was at all relevant times mentioned herein, employed by the Department as a Deputy Sheriff. He is being sued in his individual and official capacities.

9. Defendant Deputy Sheriff Bruce Vermilyer ("Deputy Vermilyer") was at all relevant times mentioned herein, employed by the Department as a

Deputy Sheriff. He is being sued in his individual and official capacities.

10. Defendant Deputy Sheriff Nancy Bunch ("Deputy Bunch") was at all relevant times mentioned herein, employed by the Department as a Deputy Sheriff. She is being sued in her individual and official capacities.

11. Defendant Deputy Dallas Hutts ("Deputy Hutts") was at all relevant times mentioned herein, employed by the Department as a Deputy Sheriff. He is being sued in his individual and official capacities.

12. Defendant Deputy Sheriff Nerissa Miller ("Deputy Miller") was at all relevant times mentioned herein, employed by the Department as a Deputy Sheriff. She is being sued in her individual and official capacities.

13. Defendant Corporal Ryan Jones ("Corporal Jones") was at all relevant times mentioned herein, employed by the Department. He is being sued in his individual and official capacities.

14. Defendant Corporal Ryan Hawkins ("Corporal Hawkins") was at all relevant times mentioned herein, employed by the Department. He is being sued in his individual and official capacities.

15. IUHLP Liquidation, Inc. d/b/a I.U. Health - La Porte Hospital ("Hospital") is an Indiana corporation with its principal place of business in Indianapolis, Indiana.

16. On January 21, 2015, LaPorte Hospital Company, LLC, with its principle place of business in Franklin, Tennessee, was granted authority to do business in Indiana. On March 2, 2016, LaPorte Hospital Company, LLC legally assumed the business name La Porte Hospital. Plaintiff names LaPorte

4

Hospital Company, LLC and La Porte Hospital as defendants herein in case they has any obligations with respect to errors and omissions by the Hospital at the time of Rachel's death.

17. Defendant Indiana University Health provides medical services to the Jail via the Hospital including performing drug and alcohol tests upon arrestees.

18. Upon information and belief, the Hospital performs alcohol blood tests premised upon protocols required by the Sheriff's Department and the jail to satisfy evidentiary requirements in criminal actions filed against arrestees.

19. Upon information and belief, the Hospital performs alcohol blood tests voluntarily upon arrestees presented by the Sheriff's Department and/or the jail.

20. The Hospital performs alcohol blood tests directly upon the arrestees and deals directly with the arrestee.

21. Upon information and belief, the hospital maintains a laboratory that performs drug and alcohol tests upon arrestees at the Department's request.

22. Upon information and belief, defendant Advanced Correctional Healthcare, Inc. ("ACH") is a foreign for-profit corporation with its principal place of business in Peoria, Illinois. ACH has contracted with La Porte County to provide medical services to the Jail. The contract was signed on behalf of La Porte County by then La Porte County Sheriff James Arnold.

23. Upon information and belief, pursuant to the contract with ACH,

Dr. Weldon Cooke is a licensed Indiana physician who, via telephone only, provided medical services and advice regarding the decedent Rachel Barnes during the time in question.

24. In doing acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

25. Due to the acts and/or omissions alleged herein, Defendants, and each of them acted as the agent, servant and employee, any/or acted in concert with each of the other Defendants herein.

## Jurisdiction and Venue

26. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured to Rachel by the United States Constitution.

27. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to redress Rachel's wrongful death and survival action under Indiana state law.

28. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 1983 because the alleged violations of Rachel Barnes's constitutional rights took place here.

## Preliminary Allegations

29. Rachel, then age 33, was arrested by La Porte County Sheriff's Deputies after she drove her car into a farm pond at 11764 W 250 N, Michigan City, Indiana, on the evening of April 17, 2015. She was charged with Operating a Motor Vehicle While Intoxicated.

6

30. Rachel was then transported by Deputy Curtis to the Hospital in La Porte, Indiana, for a blood alcohol and drug screen, which was completed at approximately 10:50 p.m.

31. It was going to take one hour to get the test results so Deputy Curtis transported Rachel Barnes to the Jail.

32. Rachel went through the intake process where she was asked for information regarding the status of her health. In the early morning of April 18, 2015, Rachel advised Deputy Vermilyer that she was subject to seizures, was going through alcohol and methadone withdrawal and stated repeatedly that she needed to go to the hospital. Rachel also told Deputy Vermilyer, "[I] [t]hink I am going to die if I don't go to the hospital."

33. Several minutes later, on the morning of April 18, 2015, Deputy Vermilyer replied to one of Rachel's requests for hospitalization as follows:

"We are on the telephone with the doctor. You're not going to the hospital, tell ya [sic] that right now. Doctor is going to prescribe you medication. You put yourself in this situation and we are going to try to take care of you the best we can."

34. Without ever seeing Rachel, Dr. Cooke prescribed three medications. As the jail lacked the third medication, which related to anxiety, Deputy Vermilyer failed to order Rachel the third medication.

35. Deputy Samuelson gave Rachel medications.

36. Rachel was placed in a cell in which she spent the rest of the night.

7

37. Upon information and belief, the Hospital did not contact the Jail to alert them that Rachel's blood alcohol exceeded .400.

38. On April 18, 2015, when he finally picked up Rachel's laboratory results from the hospital at approximately 1:30 p.m., Deputy Curtis learned that Rachel had a blood alcohol concentration equivalent to 0.447 grams per 100 milliliters of blood. After reading the report of blood alcohol level, Deputy Curtis added another charge against Rachel, but did not transport Rachel to the hospital or request that others do so.

39. At the time of Rachel's arrest and incarceration, the Jail had a policy governing intoxicated intakes. Anyone with a blood alcohol over of over 0.24 was to be sent to the emergency room for medical clearance. Further, before the detainee would be accepted into the Jail, there had to be documentation presented of medical clearance.

40. Upon information and belief, no one ever sought medical clearance for Rachel to be incarcerated rather than hospitalized.

41. Upon information and belief, the Hospital did not contact the Jail to inform personnel that Rachel's blood alcohol level required medical treatment.

42. Rachel spent the rest of April 18, 2015 at the Jail, locked in Cell TH- 11, which is equipped with a surveillance camera.

43. Upon information and belief, the surveillance camera was being monitored by Deputy Bunch and Deputy Miller.

44. At approximately 6:53 p.m. on April 18, 2015, Rachel suffered a

8

seizure which was not noticed by Jail personnel monitoring Rachel's cell.

45. From the time Rachel suffered the first seizure until she was discovered dead in her cell, at approximately 1:30 a.m. on April 19, 2015, no staff of the Jail and/or Sheriff's Department checked on Rachel. Upon information and belief, Rachel laid in the same position, face down on a mat on her floor for over five hours without movement.

46. An autopsy determined that Rachel died of seizure due to ethanol withdrawal.

47. Rachel experienced pain and suffering as she struggled to deal with the physical ramifications from withdrawal and seizures.

48. At the time of her death, Rachel was survived by her father, James Barnes.

49. Prior to Rachel's death, there had not yet been a judicial determination made regarding whether there was probable cause to support the charges against her.

50. Prior to her death, defendants failed to have Rachel examined by a physician or other qualified medical personnel, nor was she transported to a hospital for medical care.

51. Upon information and belief, the Hospital never contacted the Jail to inform it that Rachel's blood alcohol level was at a dangerous and life-threatening level.

52. Sheriff Boyd is a public official and the Department is a public entity, as is La Porte County. They are sued under Title 42 U.S.C. §1983 for

violations of the Fourth Amendment of the United States Constitution and Indiana state law for the acts and omissions of the individual defendants, and each of them, who at the time they caused Rachel M. Barnes's injuries, damages and death were duly appointed, qualified and acting officers, employees, and/or agents of Sheriff Boyd and/or the Department acting within the course and scope of their employment and or agency.

53. Plaintiff alleges that the conduct of each Defendant deprived Rachel A. Barnes of her constitutional rights to life and medical care for her serious but treatable medical needs while in custody at the Jail, and caused Rachel A. Barnes to suffer grievous harm, emotional and physical injuries prior to her death, and ultimately caused her death while she was in the custody of Defendants.

54. Each of the Defendants caused and is responsible for the unlawful conduct and resulting harm by, *inter alia,* personally participating in the conduct, or acting jointly and in concert with others who did so, by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct, by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred, by failing and refusing to initiate and maintain adequate training, supervision and staffing with deliberate indifference to Plaintiffs' rights, by failing to maintain proper and adequate policies, procedures and protocols, and by ratifying and condoning the unlawful conduct performed by agents and officers, deputies, medical providers and employees under their direction and control.

55. Each of the defendants knew or should have known that the failure to adopt adequate policies or practices would have resulted in the harm to and death of Rachel Barnes.

56. Plaintiff alleges on information and belief that the defendant members of the Department failed to follow the Department's policy regarding persons with over a .24 BAC. Further, plaintiff maintains the defendants deliberately chose to not enact written policies, procedures or protocols concerning when and under what circumstances to provide pretrial detainees appropriate medical care and treatment when the detainee is going through withdrawal from both alcohol and opiates and has shared a history of seizures.

57. Plaintiff alleges upon information and belief that Defendants have allowed conditions at the Jail to deteriorate, causing an environment where health care is ignored and detainee safety is disregarded.

58. Plaintiff alleges upon information and belief that all Defendants ordered, authorized, acquiesced in, tolerated, permitted or maintained customs and usages permitting the other Defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs or usages as alleged herein. Alternatively, Defendants' conduct as alleged herein constitutes an unreasonable pattern of constitutional violations based either on a plan by Defendants or on Defendants' indifference or reckless disregard of the safety, security, and rights of Plaintiff's decedent.

59. Detention and correctional facilities have a constitutional obligation to reasonably respond to the medical needs of arrestees who have

11

not yet had a judicial determination regarding probable cause.

60. The Defendant Sheriff Boyd and the La Porte County Sheriff's deputies identified herein are responsible for Rachel's death as the result of their intentional, willful, wanton, reckless and/or negligent acts and omissions, including but not limited to the failure to properly screen her when she arrived at the jail, failure to provide medical care and/or treatment to Rachel; failure to monitor, protect and provide safety for Rachel while she was detained; failure to monitor Rachel for alcohol withdrawal syndrome; failure to timely contact emergency services to transport Rachel to the hospital; and the failure of supervisory officers, particularly Sheriff Boyd and Jail Commander Miley, to train and supervise their officers, deputies, and staff.

61. The failure of Sheriff Boyd and the La Porte County Sheriff's deputies identified herein to adequately monitor Rachel for withdrawal symptoms, as well as the failure to provide Rachel with emergency medical treatment in a timely manner, demonstrates a total lack of regard for her right to be free from unnecessary and unlawful bodily harm.

62. The acts and omissions of Sheriff Boyd and the La Porte County Sheriff's deputies identified herein were done willfully, wantonly, and maliciously, and with such reckless disregard of the consequences as to reveal a conscious and deliberate indifference to Rachel's serious medical condition which resulted in her untimely and tragic death.

63. Sheriff Boyd and the La Porte County Sheriff's deputies identified herein are responsible for Rachel's death as the result of their intentional,

willful, wanton, reckless and/or negligent acts and omissions, including but not limited to the failure to properly screen her when she arrived at the jail, failure to provide medical care, and/or treatment to Rachel; failure to monitor, protect and provide safety withdrawal from alcohol and opiates; failure to timely contact emergency services to transport Rachel to the hospital; and the failure of Sheriff Boyd to train and supervise the officers, deputies, and staff.

64. Upon information and belief, there were no nurses working at the Jail the weekend when Rachel was brought into the jail and died. Sheriff Boyd and La Porte County failed to hire nurses to work the weekends.

65. ACH failed to arrange for nursing coverage at the jail over the weekends.

66. Dr. Cooke, knowing that there was no medical staff available at the jail, failed to provide reasonable medical care for an individual going through alcohol withdrawal, instead merely providing medical advice via a telephone conference with Deputy Vermilyer.

67. The Hospital, Dr. Cooke and ACH are responsible for Rachel's death as the result of their deliberate indifference, intentional, willful, wanton, reckless and/or negligent acts and omissions, including but not limited to the failure to properly screen her when she administered a blood alcohol test, failure to provide medical care, and/or treatment to Rachel; failure to monitor, protect and provide safe withdrawal from alcohol and opiates; failure to timely contact the Jail so that proper medical services could be provided Rachel.

68. The acts and omissions of the Hospital, Dr. Cooke and ACHN were

13

done willfully, wantonly, and/or maliciously, and with such reckless disregard of the consequences as to reveal a deliberate indifference to Rachel's serious medical condition which resulted in her untimely and tragic death.

69. Upon information and belief, it was the custom and the practice of the Hospital to simply leave lab results for pick-up by the Sheriff's Department and/or jail personnel, regardless of whether the test results show a life-threatening level of alcohol in an arrestee.

70. Upon information and belief, the Hospital failed to adopt a policy that required the Hospital and/or Lab personnel to contact the Sheriff's Department and/or the jail when an arrestee's blood alcohol levels are life-threatening.

71. Upon information and belief, the Hospital failed to train personnel as to the procedures to be followed when an arrestee's blood alcohol tests over .400 and there is no one to immediately pick-up or report the results to from the Jail.

72. The constitutional obligation of all the Defendants to keep Rachel safe stems from the Fourth Amendment of the United States Constitution. Rachel's death resulted from the wrongful acts of the Defendants.

### FIRST CLAIM FOR RELIEF

73. Plaintiff realleges and incorporates by reference all the material allegations of Rhetorical Paragraphs 1 through 72 as though fully set forth herein.

74. Defendants' knowing failure and/or refusal to provide Rachel with

14

reasonable medical care caused her death.

75. Defendants' failure to attempt in any way to ameliorate the pain and suffering that Rachel reported to the booking Deputy, and their refusal to provide her with reasonable medical care is in violation of the Fourth Amendment of the United States Constitution.

## SECOND CLAIM FOR RELIEF

76. Plaintiff realleges and incorporates by reference Rhetorical Paragraphs 1 through 75 as though fully set forth herein.

77. Plaintiff alleges, upon information and belief, that Defendants recklessly failed to properly train Jail personnel on the provision of medical care to detainees.

78. Defendant Sheriff Boyd had a duty and obligation to train and supervise the jail personnel regarding: (a) how to recognize the signs and symptoms of alcohol withdrawal syndrome exhibited by detainees such as Rachel, and (b) how to timely and properly respond to detainees suffering from alcohol withdrawal syndrome, a potentially deadly condition requiring immediate medical care.

79. Defendants knew or should have known that the policy, custom or practice of failing to adequately train Jail staff would cause grievous injury or death to detainees, including Rachel, in violation of her constitutional rights.

80. The conduct of Defendants proximately caused Rachel to suffer personal injury, emotional distress and death as a result of the deprivation of her constitutional rights in violation of the Fourth Amendment of the United

15

States Constitution.

### THIRD CLAIM FOR RELIEF

81. Plaintiff realleges and incorporates by reference Rhetorical Paragraphs 1 through 80 as though fully set forth herein.

82. Plaintiff alleges, upon information and belief, that Defendants maintained a policy, custom or practice of denying prisoners access to medical care.

83. Defendants knew or should have known that the policy, custom or practice of denying prisoners access to medical care would cause grievous injury or death to detainees, including Rachel, in violation of her constitutional rights.

84. The conduct of Defendants proximately caused Rachel to suffer personal injury, emotional distress and death as a result of the deprivation of her constitutional rights in violation of the Fourth Amendment of the United States Constitution.

### FOURTH CLAIM FOR RELIEF

85. Plaintiff realleges and incorporates by reference Rhetorical Paragraphs 1 through 84 as though fully set forth herein.

86. Defendant Sheriff Boyd had a duty and obligation to provide jail personnel with medical training and medical supervision. Defendants knew or should have known that the policy, custom or practice of denying medical training to jail personnel would cause grievous injury or death to detainees, including Rachel, in violation of her constitutional rights.

16

87. The conduct of Defendants proximately caused Rachel to suffer personal injury, emotional distress and death as a result of the deprivation of her constitutional rights in violation of the Fourth Amendment of the United States Constitution.

## FIFTH CLAIM FOR RELIEF

88. Plaintiff realleges and incorporates by reference all the material allegations of Rhetorical Paragraphs 1 through 87 as though fully set forth herein.

89. Rachel's death was caused by the wrongful act of the Defendant; therefore, Plaintiff is entitled to recover damages under Ind. Code § 34-23-1-2.

## SIXTH CLAIM FOR RELIEF

90. Plaintiff realleges and incorporates herein by reference all of the allegations contained in Paragraphs 1 through 89 as though fully set forth herein.

91. Dr. Cooke failed to conduct an in-person medical examination of Rachel and instead of ordering her hospitalization, or follow up concerning her condition, with deliberate indifference relied upon a third party's description of Rachel's medical problems knowing or having reason to know that person had received no medical training thereby Dr. Cooke and ACH caused Rachel injury and such deviation was a direct and proximate cause of Rachel's loss and damages.

## SEVENTH CLAIM FOR RELIEF

92. Plaintiff realleges and incorporates herein by reference all of the allegations contained in Paragraphs 1 through 91 as though fully set forth herein.

93. The Hospital failed to notify anyone in the Department, the Jail, Dr. Cooke and/or ACH of the results of Rachel's alcohol blood test. This failure was done with deliberate indifference whereby the Hospital caused Rachel injury and such deviation was a direct and proximate cause of Rachel's loss and damages.

## Request for Relief

WHEREFORE, Plaintiff requests that this Court:

a. Accept jurisdiction of this case and set the matter for hearing;

b. Declare that the actions and inactions of the Defendants have violated federal law for the reasons noted above;

c. Award Plaintiff his damages recoverable under 42 U.S.C. §§ 1983 and 1988;

d. Award Plaintiff his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

e. Award Plaintiff his damages recoverable under Ind. Code § 34-23-1-2, including attorney's fees and costs; and,

f. Award all other proper relief.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests that this action be tried by a jury.

Respectfully submitted,

*/s/Karen Celestino-Horseman*
Karen Celestino-Horseman
Of Counsel, Austin & Jones, P.C.
One N. Pennsylvania St.
Suite 220
Indianapolis, IN 46204
Tel: (317) 632-5633
Fax: (317) 630-1040
E-mail: karen@kchorseman.com


*/s/ Raymond L. Faust*
Raymond L. Faust
Norris Choplin Schroeder, LLP
101 West Ohio Street, Ninth Floor
Indianapolis, IN 46204-4213
Tel: (317) 269-9330
Fax: (317) 269-9338
Email: rfaust@ncs-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2017, a copy of the foregoing Third Amended Complaint for Damages and Request for Trial by Jury was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Guy S. DiMartino
Pejic & DiMartino, P.C.
guy@dpjustice.com

Shaw R Friedman
Friedman & Associates PC
sfriedman.associates@frontier.com

Wendell W. Walsh
May Oberfell Lorber
wwalsh@maylorber.com

Carol A. Dillon
Bleeke Dillon Crandall, P.C.
carol@bleekedilloncrandall.com


/s/ Karen Celestino-Horseman
Karen Celestinio-Horseman