UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES BARNES, as Personal
Representative of the ESTATE OF
RACHEL A. BARNES, Deceased,                    )
                                               )
        Plaintiff,                             )
                                               )
        v.                                     )   Cause No.:  3:16-cv-00190-RLM-MGG
                                               )
                                               )
JOHN T. BOYD, Sheriff of LaPorte               )
County, Indiana, LaPorte COUNTY                )
SHERIFF'S DEPARTMENT; SKYLAR                   )
M CURTIS, LaPorte County Deputy                )
Sheriff; BRUCE VERMILYER, LaPorte              )
County Deputy Sheriff NANCY BUNCH,             )
LaPorte County Deputy Sheriff; DALLAS          )
HUTTS, LaPorte County Deputy Sheriff;          )
CORPORAL NERISSA MILLER,                       )
LaPorte County Deputy Sheriff;                 )
CORPORAL RYAN JONES, LaPorte                   )
County Deputy Sheriff; CORPORAL                )
RYAN HAWKINS, LaPorte County                   )
Deputy Sheriff; DEPUTY SAMUELSON,              )
ADVANCED CORRECTIONAL                          )
HEALTHCARE, INC., DR. WELDON                   )
COOKE, IUHLP LIQUIDATION, INC.,                )
d/b/a I.U. Health – LaPorte Hospital;          )
                                               )
        Defendants.                            )

## **AFFIDAVIT OF WELDON COOKE, M.D.**

Affiant, Weldon Cooke, M.D., being first duly sworn upon his oath, states as follows:

1.      My name is Weldon Cooke and I am over the age of eighteen, of sound mind, and

am competent to testify as to all facts in this Affidavit.  All facts in this Affidavit are based on my

personal knowledge.

2.      I am a physician licensed to practice medicine in Indiana.  In July, 2015, I was

employed as a physician with Advanced Correctional Healthcare, Inc., a company that provides



physicians for county jails throughout Indiana, including the LaPorte County Jail. I have been a licensed physician for over 60 years, and I have treated patients in private practice and in correctional settings.

3.     In July, 2015, I provided medical care to inmates at the LaPorte County Jail. I was physically at the LaPorte County Jail one day a week, on Wednesday mornings, for several hours to see patients. I was specifically contracted to spend 4 hours a week at the jail, but I frequently spent 5 or 6 hours there. I was also on-call 24 hours a day, 7 days a week for questions or issues regarding inmates' medical needs. If I was not available or was on vacation, another ACH physician would fill in. When inmates entered the LaPorte County Jail, they became my patient, regardless of the length of time they were to be in the jail. Because I became the inmates' primary care physician when they entered the jail, I prescribed what medication and medical treatment I thought was medically necessary and appropriate for the patient. Once the medication was prescribed, I had no personal involvement in the dispensing of the medication. If I was unable to be reached by phone on the days was when I was not physically at the jail, the LaPorte County Jail had a list of other ACH physicians they could call. There were times when I would stop by the jail on a day other than my scheduled day to see a patient if necessary.

4.     Just because someone was arrested in LaPorte County, that did not make them my patient. The person only became my patient after they were booked into the LaPorte County Jail. It is my understanding that Rachel Barnes was arrested and was taken to the IU-LaPorte Hospital for blood testing. Rachel Barnes was not my patient at that time and I had no knowledge of her at that time. I did not order the blood testing at the hospital. Because Rachel Barnes was not my patient at that time and I did not order any blood testing, there was no reason for anyone at IU-LaPorte Hospital to call me with the blood tests results. Furthermore, I cannot ask IU-LaPorte

Hospital to inform me of test results or critical values for patients who are not my patients and when I did not order the test. That does not occur in medical practice in any setting.

5.      When I was not at the jail but received a call from an officer regarding an inmate, I would obtain the inmate's history and complaints from the officer or the nurse and occasionally I would speak directly with the inmate if necessary. I would make treatment decisions and decisions about medications based on this information. If the inmate had a medical issue that could not be managed or treated at the jail and it could not wait until I was next at the jail, then I would send the patient to the hospital.

6.      When I worked for ACH, I attended a 2-day conference at ACH's corporate office three times a year for training on various topics. Inmates going through withdrawal was always a training topic due to the number of people entering jails and then going through withdrawal from drugs and alcohol. In fact, more than half of all the calls I received from the LaPorte County Jail were about a patient going through opiate or alcohol withdrawal. ACH specifically provided training on how to work with jail officers who were not medically trained.

7.      My only involvement with Rachel Barnes was that I received a phone call in the early morning from an officer at the LaPorte County Jail. I was told that Ms. Barnes was going through Methodone withdrawal. Because there were no nurses on site at the time, the officer utilized the Opiate Withdrawal Protocol sheet to gather information from the patient and convey that information to me. The protocol forms were used by officers when medical staff was not onsite to help gather information from the patient to communicate that information to the doctor. To treat Ms. Barnes' opiate withdrawal, I prescribed Vistaril, Bentyl, and Clonidine. Ms. Barnes' vital signs were: blood pressure 80/51 (left arm) and 114/54 (right arm); temperature 97.5; pulse 86 (left arm) and 112 (right arm); and respirations 91. Normal respiratory rate is 16, so the "91"

recorded by the officer was likely Ms. Barnes' oxygen saturation, or 91%. It is impossible for someone to breathe 91 times in a minute. The variance between the blood pressure and pulse between the left and right arm is normal. An elevated pulse is also normal in someone being booked into jail. The officer checked on the form that Ms. Barnes was positive for sweating, vomiting, chills and that she had muscle pain in her legs. These are all normal and extremely common symptoms of opiate withdrawal. I have no actual recollection of this phone call, but I know it took place based on Ms. Barnes' medical record, which contains the Opiate Withdrawal Protocol sheet. The officer did not tell me that Ms. Barnes was also withdrawing from alcohol. I know this because the officer did not fill out an Alcohol Withdrawal Protocol sheet. Had the officer told me that Ms. Barnes was possibly withdrawing from alcohol, I would have prescribed a benzodiazepine, either Librium or Valium, and a multi-vitamin and Thiamine.

8.     I did not receive any further calls from the LaPorte County Jail regarding Ms. Barnes.

9.     I have over 60 years of experience treating patients in private practice. I have vast training and professional experience treating chronic and acute conditions. When treating my patients in the LaPorte County Jail, I did not treat them any differently than I treated my patients in private practice. When treating my LaPorte County Jail patients, I based my diagnoses and treatment decisions on the patient's subjective complaints, objective conditions, and my reasoned medical judgment developed over my 60-plus years practicing medicine. My treatment decisions regarding LaPorte County Jail patients, including Ms. Barnes, were never based whatsoever on any policy, practice, procedure or custom of Advanced Correctional Healthcare or the LaPorte County Jail. My treatment decisions regarding my jail patients, including Ms. Barnes, had nothing to do with cost or monetary concerns, as I prescribed whatever medication or treatment I thought

was appropriate, regardless of cost. I did not even know whether the LaPorte County Jail or Advanced Correctional Healthcare paid for inmates' medical care, because cost was never a concern to me.

10. Drug and alcohol withdrawal was exceedingly common in the LaPorte County Jail. I received calls from the LaPorte County Jail about jail patients going through drug and alcohol withdrawal on a daily basis. I also have extensive experience in my private practice treating patients with drug and alcohol addiction. Drug and alcohol withdrawal and detoxification is something we dealt with every day in the LaPorte County Jail. Patients' drug and alcohol withdrawal and detoxification was safely and successfully managed in the jail setting, without the need to send those patients to the hospital.

11. Attached hereto as Exhibit B are true and accurate copies of Ms. Barnes' medical records from the LaPorte County Jail, including her Pre-Booking Form, her Medical Intake Screening, the Opiate Withdrawal Protocol sheet, and her Medication Administration Record.

## **VERIFICATION**

I affirm under the penalties for perjury that the foregoing representations are true and correct to the best of my knowledge and belief.

4 – 5 – 20 18
Date

Dr. Weldon Cooke