UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES BARNES, as Personal Representative of the ESTATE OF RACHEL A. BARNES, Deceased, <br><br> Plaintiff <br><br> v. <br><br> JOHN T. BOYD, Sheriff of LaPorte County, Indiana, *et al.*, <br><br> Defendants | CAUSE NO. 3:16-CV-190 RLM-MGG |

## OPINION AND ORDER

Defendants Dr. Weldon Cooke, Advanced Correctional Healthcare, Inc., and IUHLP Liquidation, Inc., doing business as I.U. Health-LaPorte Hospital filed motions for summary judgment with respect to each of the remaining claims asserted against them in Mr. Barnes' third amended complaint. For the following reasons, the court grants those motions.

Summary judgment is appropriate when the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011). The court must construe the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to Mr. Barnes, as the non-moving party. Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986). As the moving parties, the defendants bear the burden of informing the court of the basis for their motions, and presenting evidence demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If they meet that burden, Mr. Barnes can't rest upon the allegations in the pleadings, but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." Marr v. Bank of Am., N,A., 662 F.3d 963, 966 (7th Cir. 2011).

LaPorte County Sheriff Deputy Skyler Curtis arrested Rachel Barnes when he found her intoxicated next to the car she had driven into a pond. He took her to the I.U. LaPorte Hospital for a blood draw and alcohol test. After drawing her blood, a hospital employee told Deputy Curtis that it would take an hour to get the results. Deputy Curtis took Ms. Barnes to the county jail and went off his shift without collecting the test results. Those results showed that Ms. Barnes had a blood alcohol content of .447 percent.

Officer Nancy Bunch, the jail intake officer that Friday night, believed Ms. Barnes was under the influence of drugs or alcohol based on her observation of slurred speech, dilated pupils, unsteady gait or balance, bloodshot eyes and confusion. Ms. Barnes told Officer Bunch she had last taken her methadone five days earlier, and had consumed a pint of vodka in the previous hour.

Early the next morning, Ms. Barnes complained that she couldn't breathe, She told Corporal Ryan Hawkins that she suffered from chronic obstructive pulmonary disease and was being treated for opiate addiction. The county hadn't arranged for Advanced Correctional Healthcare, its private health care provider, to staff the jail on weekends, so there were no medically trained personnel at the jail. Cpl. Hawkins filled out an Opiate Withdrawal Protocol sheet and took Ms. Barnes's vital signs. Under the county's agreement with Advanced Correctional Healthcare, Dr. Weldon Cooke became Ms. Barnes's private physician when she was booked into the jail, so Cpl. Hawkins called Dr. Cooke at home to discuss Ms. Barnes's anticipated opiate withdrawal. Cpl. Hawkins told Dr. Cooke nothing about alcohol withdrawal. Dr. Cooke prescribed medicines for Ms. Barnes.

Ms. Barnes raised the issue of alcohol during her medical intake screening later Saturday morning. Officer Bruce Vermilyer thought Ms. Barnes was under the influence of alcohol, but because Cpl. Hawkins already had spoken with Dr., Cooke, neither Officer Vermilyer or anyone else relayed any concerns about alcohol withdrawal to Dr. Cooke. Officer Nerissa Miller took over for Cpl. Hawkins when the shifts changed a little after noon; Cpl. Hawkins told her about Ms. Barnes's opiate withdrawal, but nothing about her alcohol withdrawal.

A little later, Dep. Curtis picked up the blood alcohol test results from the hospital. He told no one about the high blood alcohol content and simply corrected

3

the arrest report to reflect a BAC of .447. Under jail policy, an arrestee with a BAC over .24 wasn't supposed to be admitted to the jail.

Several times during Saturday afternoon, Ms. Barnes complained to jail personnel of weakness. Early on Sunday morning, officers found Ms. Barnes dead in her cell. An autopsy disclosed that the cause of death was seizure due to alcohol withdrawal.

John Barnes, the Successor Administrator of the Estate of Rachel Barnes, sues Dr. Cooke and Advanced Correctional Healthcare, IUHLP Liquidation, Inc. (the hospital) and the county sheriff's department and several of its deputies and officers. Mr. Barnes alleges that the defendants violated the Fourth Amendment (Counts 1-4) and state law (including Indiana's Wrongful Death Statute, IND. CODE § 34-23-1-2), when they deprived Ms. Barnes of medical care for a serious medical condition (alcohol withdrawal and related seizures) while she was incarcerated as a pretrial detainee at the LaPorte County Jail and caused her death. The sheriff's department and personnel haven't moved for summary judgment; Dr. Cooke, Advanced Correctional Healthcare and the hospital have moved for summary judgment.

After Mr. Barnes voluntarily dismissed the medical malpractice complaint against Dr. Cooke that was pending before the medical review panel, the court granted Dr. Cooke's motion to dismiss the state law claims against him (Counts 5 and 6), which were essentially medical malpractice claims [Doc. No. 113]. The

court also granted LaPorte Hospital's Rule 12(c) motion for judgment on the pleadings to the extent Ms. Barnes' § 1983 claims sought to hold it vicariously liable for the acts or omissions of its lab employees, but found that he had stated a plausible claim for direct liability and that there wasn't a sufficient factual basis to determine whether the hospital was a state actor for purposes of the § 1983 claims [Doc. No. 113].

In his Statement of Genuine Disputes, Mr. Barnes contends that two disputed facts preclude the entry of summary judgment for Dr. Cooke and Advance Correctional Healthcare:

> (1) Dr. Cooke's assertion that the blood pressure variance between Ms. Barnes' left and right arm on the night she was arrested was "normal". Plaintiff's expert, Dr. Joliff, didn't think it was and would have asked that those vitals be retaken; and

> (2) Dr. Joliff's belief that Ms. Barnes' oximeter reading either indicated a potential problem or was inaccurate, and should have been rechecked.

Dr. Cooke and Advanced Correctional Healthcare contend that the disputed facts aren't outcome determinative – they don't show the treatment Dr. Cooke prescribed for methadone withdrawal (the only condition he'd been notified of) or the policies and procedures Advanced Correctional Healthcare had in place were objectively unreasonable – and so aren't material and don't preclude summary

5

judgment. *See* Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997). The court agrees.

To prevail on his Fourth Amendment claims against Dr. Cooke, Mr. Barnes must show that Dr. Cooke's response to Ms. Barnes' medical needs was objectively unreasonable and caused her death. Currie v. Chhabra, 728 F.3d 626, 631 (7th Cir. 2013). Four factors are considered: (1) whether the [medical provider] had notice of the detainee's medical needs; (2) the seriousness of the medical needs; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." Estate of Perry v. Wenzel, 872 F.3d 439, 453 (7th Cir. 2017); Ortiz v. City of Chicago, 656 F.3d 523, 527 (7th Cir. 2011).

Mr. Barnes contends that Ms. Barnes' blood alcohol level of .447 was "life-threatening" and that the jail "ha[d] an express interest in seeing that inmates who present a risk of alcohol withdrawal receive objectively reasonable medical treatment", as evidenced by its policy that prohibited arrestees with a blood alcohol level above .24 from being admitted to the jail without medical clearance. No one disputes those facts, but Mr. Barnes must also show that Dr. Cooke had notice of Ms. Barnes' medical needs. He hasn't done that.

Mr. Barnes contends Dr. Cooke knew that Ms. Barnes had a medical condition – methadone/opiate withdrawal – and should have inquired about other conditions or directed that she be taken to the hospital if he didn't want to treat

6

her himself. Mr. Barnes says Dr. Cooke's lack of specific knowledge about her intoxication and blood alcohol level "was his fault because he chose not to perform his medical obligations in an objectively reasonable manner", *e.g.*, to seek a complete medical history, to talk with Ms. Barnes and take her medical history directly from her, or to ask what she was being charged with and what other conditions she might have. But his arguments aren't supported by any relevant legal authority and he hasn't presented any evidence to show that Dr. Cooke's response to Ms. Barnes's known medical needs (her opiate withdrawal) was objectively unreasonable and caused her death. None of the experts testified that Dr. Cooke breached any standard of care. Two of the experts, Dr. Thomas Short and Dr. Heath Joliff (the plaintiff's expert), opined that the medical care Dr. Cooke provided for opiate withdrawal was reasonable and within the community standard of care (Joliff Deposition at p. 30 ) (Short Affidavit at ¶ 6).[1] Two other experts, Dr. Joseph Richardson and Dr. Sonali Shukla, expressed the opinion that Mr. Barnes's death resulted from jail personnel's failure to immediately communicate information regarding her alcohol levels and alcohol withdrawal to the doctor, pursuant to protocols at the jail. (Affidavit of Dr. Richardson at ¶ 6-11) (Deposition of Dr. Shukla at pp. 56-57).

---

[1] Dr. Joliff also stated during his deposition that the things that troubled him about this case were not enough to say that Dr. Cooke breached the standard of care. (Dr. Heath Joliff's Deposition at pp. 42-43 and 93 [Doc. No. 111-12].

The party bearing the burden of proof on an issue must produce evidence sufficient to establish the existence of every element of the party's cause. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Mr. Barnes hasn't met that burden with respect to the remaining claims against Dr. Cooke.

Mr. Barnes's federal claims against Advanced Correctional Healthcare are premised on its alleged failure to implement policies and train deputies on how to "gather a medical history", "diagnose a patient", and determine which protocol form to use, among other things. He concludes that the absence of such policies and training caused Ms. Barnes's death. But he hasn't pointed to any evidence to support those claims.

Dr. Richardson attests in his affidavit the jail used a "protocol driven, medical decision making system"; that "[t]he protocols established and approved by the jail [were] reflective of a national standard of care", and that had jail personnel followed those protocols and immediately communicated the ethanol test results to the jail medical staff (Dr. Cooke), "proper medical treatment would have been rendered and Ms. Barnes would have had a substantially higher probability of survival." (Richardson Affidavit at ¶¶ 7-11 [Doc. No. 111-6]). He concluded that Ms. Barnes's death was the direct result of a failure follow protocol and communicate the test results to Dr. Cooke. Id.

Mr. Barnes moved to strike Dr. Richardson's assertion that the jail's protocols were "reflective of a national standard or care" and were "established

8

and widely accepted" contending that his opinion lacks a proper foundation because he didn't identify what the protocols were. But Dr. Richardson attested in his affidavit that he reviewed the jail intake medical records, which included the intake questionnaires and withdrawal protocol sheets used by jail staff when Ms. Barnes was booked at the jail. [Doc. No. 111-2]. Mr. Barnes's objection to the admissibility of Dr. Richardson's opinion is therefore overruled and his motion to strike [Doc. No. 124] is denied.

Mr. Barnes hasn't presented any evidence to rebut Dr. Richardson's conclusions or to show that Advanced Correctional Healthcare's policies and procedures were deficient and caused or contributed to Ms. Barnes's death.

It's not clear in the third amended complaint, which "Defendant" allegedly violated Indiana's Wrongful Death Act, IND. CODE § 34-23-1-2 (Count 5). To the extent Mr. Barnes contends that Advanced Correctional Healthcare is vicariously liable for Dr. Cooke's alleged violation of the Act, Advanced Correctional Healthcare contends that it is entitled to summary judgment as a matter of law because the claim against Dr. Cooke was dismissed. Mr. Barnes didn't respond to that argument or present any evidence that would support a viable wrongful death claim against Advanced Correctional Healthcare. Summary judgment is therefore appropriate with respect to all claims asserted against Advanced Correctional Healthcare.

LaPorte Hospital contends that summary judgment is also appropriate with respect to the Fourth Amendment claims asserted against it because LaPorte Hospital isn't a state actor. Alternatively, it argues that, even if it was a state actor, it can't be held vicariously liable for the acts of its employees, and Mr. Barnes hasn't shown that its lab policies or procedures were objectively unreasonable. The court granted LaPorte Hospital's Rule 12(c) motion to dismiss any federal claims based on vicarious liability in April [Doc. No. 113].

To prevail on his § 1983 claims against LaPorte Hospital, Mr. Barnes must show that the hospital: (1) was acting under color of state law, and (2) deprived Ms. Barnes of a right secured by the Constitution or federal law. Rodriguez v. Plymouth Ambulance Service, 577 F.3d 816, 822 (7th Cir. 2009). LaPorte Hospital contends that it's a private entity, and had only an "incidental or transitory relationship" with the LaPorte County Sheriff's Department, the jail, and the decedent, Rachel Barnes, and so isn't a state actor subject to suit under § 1983. Id. at 627; Vaught v. Quality Correctional Care, LLC, Cause No. 1:15-CV-346-TLS, 2018 WO 656361 (N.D. Ind. Feb. 1, 2018).

Courts weigh four factors in determining whether a private medical care provider who treats an in-custody patient acts under the color of state law: "(1) the setting in which the medical care was rendered; (2) the degree of state control over the health care provider's decisions; (3) the voluntariness of the health care provider's relationship with the state; and (4) the relationship of the private

medical provider to the prisoner." Rodriguez v. Plymouth Ambulance Service, 577 F.3d at 826-828. The "ultimate issue" is whether the medical care provider's "alleged infringement of federal rights [is] 'fairly attributable to the State?" Id. at 823 (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)); Vaught v. Quality Correctional Care, LLC, Cause No. 1:15-CV-346-TLS, 2018 WL 656361, at * (N.D. Ind. Feb. 1, 2018).

The first two factors weigh against a finding that LaPorte Hospital is a state actor, so LaPorte Hospital focuses it argument on its relationship with the jail and Ms. Barnes (the third and fourth factors). It contends that it only assists the jail in its duty to provide medical care to inmates, and doesn't replace the medical providers the jail already has in place; that it doesn't have a written contract to provide out-patient services for the jail; and that it only had incidental contact with the jail and Ms. Barnes in this case.

While LaPorte Hospital didn't have a formal contract with the county to provide out-patient services for the jail, Dr. Shukla, the lab's Medical Director, stated during his deposition that it had an informal arrangement with the jail under which deputies could bring detainees who appeared to be intoxicated to the hospital lab for blood tests without a physician's order, and the county would compensate the Hospital for those services. But that agreement does not, in and of itself, make LaPorte Hospital a state actor, and Ms. Barnes offers nothing more.

The court can't find on the basis of the record before it that the Hospital's alleged infringement of federal rights is "'fairly attributable to the State". *See, i.e.*, Rodriguez v. Plymouth Ambulance Service, 577 F.3d at 823; Vaught v. Quality Correctional Care, LLC, Cause No. 1:15-CV-346-TLS, 2018 WL 656361, at * (N.D. Ind. Feb. 1, 2018). The services in question were rendered at a private facility, there's no evidence to suggest that the state exercised any control over the medical provider's decisions, and LaPorte Hospital's contact with the jail and Ms. Barnes was extremely limited and incidental. LaPorte Hospital isn't a state actor in this case, *see* Vaught v. Quality Correctional Care, LLC, Cause No. 1:15-CV-346-TLS, 2018 WO 656361, at *6 (N.D. Ind. Feb. 1, 2018), and is entitled to summary judgment on Mr. Barnes' constitutional claims.[2]

For the foregoing reasons:

(1) the motions for summary judgment [Doc. Nos. 110 and 115] are GRANTED as to all remaining claims against Dr. Cooke, Advanced Correctional Healthcare, and LaPorte Hospital;

(2) the motion to strike portions of Dr. Richardson's affidavit [Doc. No. 124] is DENIED;

---

[2] As previously noted, the wrongful death claim in Count 5 of the third amended complaint appear to be limited to Dr. Cooke, and the plaintiff has consistently treated it as such. As the court noted in dismissing the state claims against Dr. Cooke, the wrongful death action is premised on medical malpractice and as such is subject to Indiana's Medical Malpractice Act. *See* [Doc. No. 113]. The same would be true with respect to any wrongful death claim against LaPorte Hospital.

(3) the defendants' opposed motion to continue the final pretrial conference and trial [Doc. No. 134] is DENIED; and

(4) the federal and state claims against the County Defendants remain pending and are set for trial on January 3, 2019.

SO ORDERED.

ENTERED:   November 27, 2018

      /s/ Robert L. Miller, Jr.
    Judge, United States District Court